UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DANIEL SAVEDRA, | No. ED CV 04-1456-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 9, 2004, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on January 21, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 7, 2005, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on March 21, 1963. [Administrative Record ("AR") at 79, 207.] He has a tenth grade education and has obtained his GED. [AR at 208-09.] He has previous work experience in a printing shop and in pipeline construction. [AR at 82, 105, 224-25.]

On May 20, 2002, plaintiff protectively filed an application for Supplemental Security Income payments, alleging that he had been unable to work since May 31, 2001, due to diabetes with neuropathy and related vision problems. [AR at 79-81, 91-92, 101.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on December 9, 2003, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 204-34.] A medical expert and a vocational expert also testified. [AR at 234-45.] On January 28, 2004, the ALJ determined that plaintiff was not disabled because he can perform light and sedentary work, and there are a significant number of jobs he can perform in the national economy. [AR at 8-17.] When the Appeals Council denied review on October 22, 2004, the ALJ's decision because the final decision of the Commissioner. [AR at 4-6.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well

as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of his disability. [AR at 12.] At step two, the ALJ concluded that plaintiff has the severe impairment of insulin-dependent diabetes mellitus with neuropathy. [AR at 12.] At step three, the ALJ found that plaintiff's impairment does not meet or equal the requirements of any of the impairments in the Listings. [Id.] The ALJ further determined that plaintiff retains the residual functional capacity[1] to perform light work.[2] [Id.] At step four, the ALJ determined that plaintiff is unable to perform any of his past relevant work. [AR at 17.] At step five, the ALJ concluded that based on plaintiff's residual functional capacity to perform a range of

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

[2] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ also concluded that plaintiff can stand and/or walk for two hours in an eight-hour workday and is able to sit for six hours, but that he is limited to standing for no more than fifteen to thirty minutes at a time and cannot use bilateral foot controls. His work environment must be air-conditioned, and his job cannot involve fast or dangerous machines, or require fast-paced performance. [AR at 12.]

light and sedentary work,[3] there are a substantial number of jobs in the national economy that he can perform. [Id.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly consider the treating physician's opinion of disability. Joint Stipulation ("Joint Stip.") at 2-4. The Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision. As explained below, the ALJ properly rejected the treating physician's opinion regarding plaintiff's functional limitations for the reasons that: (1) the opinion was not supported by the objective medical findings, (2) plaintiff's self-described activity level indicated a higher level of physical capabilities, and (3) the non-examining, testifying medical examiner reached a less restrictive determination.

**THE ALJ PROPERLY REJECTED THE TREATING PHYSICIAN'S OPINION BASED ON SPECIFIC AND LEGITIMATE REASONS.**

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. As a general rule, more weight should be given to the opinion of a treating physician than to the opinions of doctors who do not treat the plaintiff. Lester, 81 F.3d at 830; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.").

"However, an ALJ need not give controlling weight to the opinion of a treating physician." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). "The treating

---

[3] Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

5

physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). For example, the ALJ is not bound to accept a treating physician's opinion that is brief, conclusory, and not supported by clinical findings, especially when the opinion is in the form of a check-off report. Id.

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359 F.3d at 1159 (quoting Magallanes, 881 F.2d at 751). Where the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). When the treating physician's opinion is not uncontroverted, the ALJ may reject it by setting forth specific and legitimate reasons for doing so which are based on substantial evidence in the record. Smolen, 80 F.3d at 1285.

Here, the ALJ gave little probative weight to the opinion of plaintiff's treating physician, Dr. Deborah Small. Specifically, the ALJ discounted Dr. Small's physical capacity assessment of plaintiff conducted on October 28, 2003, in which she indicated that plaintiff's "severe diabetic neuropathy" significantly restricted his functional limitations.[4] [AR at 14, 202-03.] Plaintiff contends that the ALJ's rejection of Dr. Small's opinion was in error, "as the medical records clearly indicate an 'objective' condition, 'neuropathy.'" See Joint Stip. at 3. Plaintiff's argument appears to misconstrue the ALJ's decision, however, as the ALJ clearly recognizes that plaintiff has "insulin-dependent diabetes mellitus with neuropathy." [AR at 12.] Rather, in determining that

---

[4] The assessment, entitled "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)," shows the following: (1) plaintiff had the maximum ability to occasionally and/or frequently lift and carry less then ten pounds; (2) plaintiff had the maximum ability to stand and walk less than two hours during an eight hour day; and (3) his maximum ability to sit was about two hours during an eight hour day. Dr. Small checked off that plaintiff's "severe diabetic neuropathy" affected the following physical functions: reaching, handling, fingering, feeling, and pushing/pulling. She also determined that plaintiff should avoid even moderate exposure to extreme temperatures, humidity, noise, fumes/odors/poor ventilation, and hazards (i.e., machinery, heights), and avoid all exposure to wetness. Dr. Small checked off that plaintiff would predictably be absent from work more than three times a month. In response to the question asking what medical findings support the determination that plaintiff's physical functions were affected, Dr. Small wrote: "poor control of type 1 DM [i.e., diabetes mellitus] [and] loss of sensation." [AR at 202-03.]

plaintiff could perform light work, the ALJ found no objective evidence supporting "the level of severity and functional limitations" described by Dr. Small -- and did not, as plaintiff contends, reject plaintiff's diagnosis of diabetic neuropathy. [AR at 14.] As set forth below, the ALJ's rejection of Dr. Small's opinion was properly supported by specific and legitimate reasons based on substantial evidence from the record.

First, the ALJ correctly concluded that the objective medical findings did not support the level of severity that Dr. Small suggested. Dr. Jay Dhiman conducted an internal medical evaluation of plaintiff on August 3, 2002. [AR at 148-51.] The results of his examination show that plaintiff's visual acuity was 20/30, and his ears/nose/throat, neck, chest/lungs, abdomen, and pulses were normal. [AR at 149.] Additionally, without any difficulty, plaintiff was able to walk, get on and off the examination table, and squat and rise. [AR at 149-50.] Plaintiff exhibited no spinal tenderness, and had full range of motion in his spine, hips, knees, and ankles. [AR at 150.] Dr. Dhiman did note that plaintiff had decreased pinprick, light touch, and vibratory sensation below the ankles bilaterally. [AR at 150.] He determined, however, that plaintiff's symptomatology was mild and should respond to medication. [AR at 151.] Based on these results, Dr. Dhiman found no limitations in sitting, standing or walking, and determined that plaintiff did not need an assistive device for ambulation. [AR at 151.] Moreover, he determined that plaintiff could lift 50 pounds frequently and 100 pounds occasionally, and that plaintiff had no postural, manipulative, visual, communicative, or workplace environmental limitations. [AR at 151.] As described, these normal range physical test results are in direct conflict with Dr. Small's assessment.

The ALJ also reviewed the findings from plaintiff's medical records. In May 2001, plaintiff was treated at Arrowhead Regional Medical Center ("Arrowhead") for high blood sugar after he failed to take his insulin for two days. [AR at 130-145.] Plaintiff was diagnosed with diabetic ketoacidosis. [AR at 136.] The treating notes show that plaintiff had full range of motion of his neck without pain, normal extremities and back, normal motor strength, normal coordination, and intact cranial nerves and sensory reactions. [AR at 136.] On March 30, 2002, plaintiff was treated at Arrowhead for hypoglycemia after he took too much insulin. [AR at 125-29.] On that occasion, plaintiff was found to have full range of motion of his neck without pain, normal extremities, normal

motor strength, and intact cranial nerves and sensory reactions. [AR at 125.] The ALJ noted that the medical evidence showed that, when plaintiff was compliant with his treatment, his condition improved. [AR at 14-15, 137, 140, 164.]

The only medical evidence from Dr. Small, aside from the October 2003 physical assessment, consists of her treating notes. These notes reflect that Dr. Small primarily treated plaintiff for his medical problems stemming from his improper diet, subjective complaints of pain, and failure to comply with his medication. [AR at 12-15, 125-146, 164-79, 192-201.] Additionally, although plaintiff reported that his pain medication was ineffective, Dr. Small indicated that she suspected his "pain perception" was the problem, and due to evidence of past drug abuse, warned plaintiff that using drugs would negate the effect of his painkillers. [AR at 166-67.] The record contains no physical test results or other objective findings by Dr. Small that support her ultimate assessment that plaintiff was severely limited with respect to his physical functioning. Accordingly, the ALJ was entitled to give weight to Dr. Dhiman's clinical findings as opposed to Dr. Small's unsupported opinion. See Magallanes, 881 F.2d at 751 (when an opinion of a non-treating physician is based on objective clinical tests that differ from the treating physician's findings, the non-treating opinion may serve as substantial evidence justifying the rejection of the treating physician's opinion).

Second, the ALJ also discounted Dr. Small's opinion on the basis that plaintiff's self-described activity level did not support the finding that plaintiff had sitting limitations, or that he would be absent from work three times per month. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (ALJ may consider, among other factors, inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his conduct). For example, when plaintiff saw Dr. Dhiman in August 2002, he reported that he walked two to three miles per day, rode his bicycle, and did household chores such as cooking, cleaning, washing dishes, and vacuuming. [AR at 148.] At the hearing, plaintiff testified that he mows the lawn, goes on walks three times a week, plays "catch" with his nephew on weekends, sits at the computer, watches television, and performs household chores. [AR at 229-31.] As the ALJ noted, plaintiff's activity level reflects a person with a physically active and healthy lifestyle. [AR at 15.] See, e.g., Morgan v. Comm'r of Soc. Sec.

Admin., 169 F.3d 595, 600 (9th Cir. 1999) (plaintiff's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of his ability to work).

Although plaintiff also testified that he experiences fatigue, pain in his feet/legs, occasional numbness in his hands, blurred vision, and that he was prescribed a cane which he uses to ambulate, the ALJ properly determined that plaintiff did not provide "any information sufficiently credible" to warrant the assessment of a more restrictive limitation than light work. [AR at 15, 206-07, 210-11, 213-21, 227.] Plaintiff's alleged vision problem is contradicted by his test results showing normal (i.e., 20/30) acuity. [AR at 149.] Nor is there evidence in the record of a prescription for a cane, or any explanation as to why plaintiff has been noncompliant with his medication. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (relevant factors include the unexplained, or inadequately explained, failure to follow a prescribed course of treatment). In any event, plaintiff's high level of physical activity belies his allegation of needing a cane to ambulate. Moreover, as the ALJ noted, the medical record reflected "routine and conservative" treatment that did not support plaintiff's severe subjective complaints. [AR at 15.] See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative medical treatment could suggest lower level of pain and functional limitation).

Third, the ALJ relied on the opinion of the testifying medical advisor, Dr. Samuel Landau, in rejecting Dr. Small's opinion. [AR at 14, 234-40.] After reviewing the entire medical record and hearing plaintiff's testimony, Dr. Landau confirmed the diagnosis of diabetes, and acknowledged that it results in pain and paresthesias in plaintiff's feet. The doctor determined, however, that plaintiff could climb stairs, bend, stoop, squat, kneel, and crawl, and that his impairments qualify him to perform a narrow range of medium work with certain restrictions.[5] [AR at 234-38.] He also found no hand limitations, and testified that, to the extent plaintiff had sensory problems, they

---

[5] When asked if plaintiff would have limitations in his ability to function in the work setting, Dr. Landau replied: "Yes...  I would limit him to standing and walking two hours out of eight. There's no reason that -- he should be able to use a cane if it helps him, although I couldn't see that that was prescribed.  There's no restrictions on sitting. Lifting and carrying I would limit to 25 pounds frequently, 50 pounds occasionally.  He can climb stairs, but he can't climb ladders, work at heights or balance. He can bend, stoop, squat, kneel or crawl, but he can't operate foot pedals or controls, and his work environment should be air-conditioned." [AR at 237.]

would only affect plaintiff if he had to "sense" objects as hot or cold, and would not affect his ability to lift or perform other hand functions. [AR at 14, 238-39.] Dr. Landau noted that plaintiff's testimony about his activities indicated substantial use of his hands (i.e., vacuuming, cooking, cleaning, washing dishes, riding a bicycle). [AR at 238-39.] As this opinion was consistent with the other objective findings, such as Dr. Dhiman's evaluation, the ALJ properly relied on Dr. Landau's testimony when assessing plaintiff's claim. See Magallanes, 881 F.2d at 752-53 (in affirming ALJ's decision, the Ninth Circuit approved the ALJ's reliance on the testimony of a non-examining, non-treating physician that was consistent with other evidence, such as the examining physician's report).

Plaintiff does not cite to any evidence supporting Dr. Small's assessment, other than to point out that he suffers from neuropathy, which, according to plaintiff, "appears to be Dr. Small's rational[e] for the 'loss of sensation' that is experienced by the Plaintiff and has resulted in [various functional] limitations." See Joint Stip. at 3. Nor does plaintiff refer to any evidence to support his conclusory assertion that the ALJ improperly rejected the treating physician's opinion, other than to say that "Dr. Small would be in a much better position than the non-examining testifying medical expert to make an opinion about the extent of the 'neuropathy' and it's [sic] affect [sic] upon [his] ability to handle things, finger things, feel objects[,] etc." Joint Stip. at 3-4. Plaintiff's argument is unavailing. As described above, Dr. Small's opinion is not supported by the objective medical evidence, and conflicts with the medical opinions of the examining and non-examining physicians.

The Court also notes that Dr. Small's assessment, consisting of a two page check-off report, was too conclusory to be highly probative, as it did not elaborate on, or otherwise explain, how plaintiff's physical impairment resulted in the functional limitations set forth on the form. [AR at 202-03.] See Magallanes, 881 F.2d at 751; Johnson, 60 F.3d at 1432 (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's

opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). In formulating her opinion, there is no indication that Dr. Small reviewed the entirety of plaintiff's records, including the evaluation by Dr. Dhiman. Nor does Dr. Small's check-off report reflect that she took into account plaintiff's physical activities, or how her findings from meetings with plaintiff translate into the restrictions in her report.

In sum, based on these specific and legitimate reasons, the ALJ's rejection of Dr. Small's opinion was appropriate. Remand is not warranted, and the ALJ's decision is affirmed.

**VI.**

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: November 3, 2005

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE